# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID ROBERT ROTH | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 18-5010 |
| PRIMECARE, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                           **June 27, 2019**

Prisoner David Robert Roth alleges the medical care provided to him by PrimeCare Medical, Inc. and several of its employees while incarcerated at the Montgomery County Correctional Facility and Berks County prison falls below his required needs and thus violates the Eighth Amendment. He fails to allege personal involvement or a policy allowing him to proceed into discovery. The PrimeCare defendants move to dismiss the complaint with prejudice. In the accompanying Order we grant PrimeCare's motion to dismiss without prejudice to allow Mr. Roth to amend his complaint consistent with this opinion.

### I. Alleged *pro se* facts[1]

At some time before his incarceration in the Montgomery County Correctional Facility ("Montgomery County prison"), Mr. Roth underwent two prostate surgeries under the care of his physician Dr. Steven Sterious at Einstein Hospital in Philadelphia.[2] At some point after the second surgery, medical staff trained Mr. Roth to catheterize himself.[3]

As a result of the surgery, Mr. Roth had an "open wound" and a catheter inserted into his bladder. These conditions persisted after his incarceration at the Montgomery County prison.[4] While in the Montgomery County prison between August 2016 to June 2017, either Mr. Roth's wound or the catheter became infected causing him to suffer from multiple urinary tract

infections.⁵ Someone prescribed him antibiotics for the infections, but the medication "did not work."⁶ Mr. Roth alleges the "prison doctor and nurses" refused to follow his urologist's orders, denied him medication, pulled out his catheter, attempted to reinsert the catheter and, while doing so, punctured his bladder.⁷ Mr. Roth's severe pain resulted in his transfer to a hospital emergency room.⁸ Mr. Roth alleges "after so many deliberate mistakes by PrimeCare Inc. staff, the doctors refused to see [him]" and, as a result, he "still cannot get corrective surgery and still suffer from [urinary tract infections]."⁹

After being transferred to the Berks County prison in June 2017, PrimeCare continued to deny him medical attention, medication, and prolonged his pain and injury by refusing to properly treat his catheter wound.¹⁰ Mr. Roth attaches sick call requests from August 2017 to July 2018 complaining primarily of continued pain from urinary tract infections and requesting different antibiotics to treat the infection.¹¹

## II. Analysis

We construe Mr. Roth's complaint under 42 U.S.C. § 1983 as alleging Defendants' deliberate indifference to his serious medical needs in violation of the Eighth Amendment.¹² The PrimeCare Defendants¹³ move to dismiss Mr. Roth's complaint with prejudice arguing (1) he cannot demonstrate deliberate indifference to a serious medical condition and, even if he has a claim for medical malpractice, negligence is not actionable under the Eighth Amendment;¹⁴ (2) he fails to allege personal involvement of each defendant sufficient for their liability under § 1983; and (3) he fails to state a claim against Prime Care Medical, Inc.¹⁵ Mr. Roth did not respond to the PrimeCare Defendants' motion to dismiss.

Prison officials violate the Eighth Amendment "when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or

2

interfering with the treatment once prescribed.'"[16] To state an Eighth Amendment claim for the denial of medical care under 42 U.S.C. § 1983, Mr. Roth must allege (1) a serious medical need and (2) prison officials were deliberately indifferent to the need.[17]

A "serious" medical need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[18] "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment" for example, where "'unnecessary or wanton infliction of pain' ... results as a consequence of denial or delay in the provision of adequate medical care" or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss."[19]

Deliberate indifference to a serious medical need is shown "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."[20] "A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety."[21] However, medical malpractice does not give rise to an Eighth Amendment violation.[22]

**A. Mr. Roth fails to plead deliberate indifference to a serious medical need.**

To proceed on an Eighth Amendment claim, Mr. Roth must allege (1) a serious medical need and (2) deliberate indifference of prison officials to the serious medical needs. The PrimeCare Defendants do not challenge the allegations of a serious medical need; they argue Mr. Roth fails to allege deliberate indifference to his serious medical needs.

3

The PrimeCare Defendants cite Mr. Roth alleging he *received* medical treatment for his condition and no allegation of a *denial* of medication or treatment.[23] They cite documents attached to the complaint showing Mr. Roth received extensive medical treatment at both prisons. These documents, according to the PrimeCare Defendants, show Mr. Roth simply disagreed with the treatment provided. For example, Mr. Roth refused an appointment with a prison arranged urologist because "it[']s not my urologist."[24] At best, argue the PrimeCare Defendants, Mr. Roth's complaint may state a negligence claim which does not, as a matter of law, rise to a deliberate indifference to a serious medical condition required to establish an Eighth Amendment violation. The PrimeCare Defendants ask we dismiss Mr. Roth's Eighth Amendment claim with prejudice.

As presently plead, we cannot determine facts sufficient to support a deliberate indifference to a serious medical need. We understand Mr. Roth's complaints to center on recurrent urinary tract infections for which he contends the proper antibiotics were not prescribed and the botched re-catheterization by Dr. Sestito and Nurse McIlhone, as outlined below. We also understand a complaint regarding the denial of a mattress by Physician Assistant Kirsch resulting in Mr. Roth sleeping on a rusty metal cot despite his catheter and open wound. But these appear to be grounded in either a disagreement with the medical protocol as determined by PrimeCare or negligence in a re-catheterization procedure. We similarly cannot find the use of a cot absent more specific facts violates the Eighth Amendment. These allegations do not amount to an Eighth Amendment violation.

The PrimeCare Defendants additionally seek dismissal of claims against individual defendants Dr. Sestito, Nurses Judy McIlhone, Mitzi Montz, and Samantha Kline, and Physician Assistant Jesse Kirsch because the complaint fails to allege personal involvement. Individual defendants must have personal involvement in the alleged wrongs to be held liable. "Personal

4

involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence" and such allegations "must be made with appropriate particularity."[25]

We need not reach this argument because we cannot determine facts sufficient to support a deliberate indifference to a serious medical need. If Mr. Roth choses to pursue claims against individuals through an amended complaint, he must plead facts sufficient to establish personal involvement in the alleged constitutional violation. We dismiss Mr. Roth's claim with leave to amend his complaint to allege deliberate indifference to a serious medical condition in the denial of medical care.

### B. We dismiss claims against PrimeCare Medical, Inc. for failing to allege a policy or custom causing a constitutional violation.

PrimeCare Medical, Inc. moves to dismiss claims against it for failing to allege a policy or custom resulting in alleged constitutional violations. Even if Mr. Roth's complaint sufficiently alleged deliberate indifference to a serious medical need, his complaint against PrimeCare Medical, Inc. fails as currently plead.

PrimeCare Medical, Inc. cannot be held liable for the acts of its employees under a theory of *respondeat superior* or vicarious liability.[26] To hold PrimeCare Medical, Inc. liable, Mr. Roth must allege it had a "policy or custom, and that the policy caused the constitutional violation ...."[27] "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'"[28] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'"[29]

Mr. Roth fails to allege any policy or custom of PrimeCare Medical, Inc. and the policy or custom caused the constitutional violation he claims. Accordingly, we grant the motion to dismiss

5

PrimeCare Medical Inc. with leave to amend his complaint to allege a policy or custom causing a constitutional violation.

## III. Conclusion

In the accompanying order, we grant the PrimeCare Defendants' motion to dismiss. Mindful of our mandate to liberally construe *pro se* allegations, we grant Mr. Roth leave to file an amended complaint consistent with this Memorandum and Federal Rule of Civil Procedure 11 to allege facts sufficient to support deliberate indifference to a serious medical need, personal involvement of each individual in an alleged constitutional violation, and a policy or custom of PrimeCare Medical, Inc. causing the constitutional violation.

---

[1] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

Because Mr. Roth is a *pro se* litigant, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Mr. Roth attaches over 100 pages of documents to his complaint, including "sick call" requests he submitted at both prisons; grievances at both prisons; "letters" to PrimeCare; and, a collection of legal research. *See* ECF Doc. No. 2 at 22-29, 31-53, 55-72, 75-88, 90-115, 132-139.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we may consider "allegations contained in the complaint[,] exhibits attached to the complaint, and matters of public record." *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

6

[2] ECF Doc. No. 2 at 7.

[3] ECF Doc. No. 2 at 58-59.

[4] ECF Doc. No. 2, § D at 7.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] ECF Doc. No. 2 at 22-29.

[12] To establish liability under Section 1983, Mr. Roth must plead (1) a deprivation of a federal right; and (2) a person acting under color of state law deprived him of that right. *West v. Atkins*, 487 U.S. 42, 48 (1988). The PrimeCare Defendants do not contest they are state actors, conceding they contract with Montgomery County to provide medical services to inmates incarcerated at the Montgomery County prison.

[13] Mr. Roth sued PrimeCare, Inc.; "PrimeCare @ Montgomery County Prison"; "PrimeCare @ Berks County Prison"; Dr. Sestito; "Nurse Judy"; Mitzy Montz, RN, HSN; P.A. Jesse Kirsch; and "RN Nurse Sam" (collectively "PrimeCare Defendants"). In its motion to dismiss, the PrimeCare Defendants concede PrimeCare Medical, Inc. contracted with Montgomery County to provide medical services to inmates incarcerated in the Montgomery County Correctional Facility and, during the relevant time periods, PrimeCare employed Dr. Sestito as a physician and Judy McIlhone, RN as a nurse to provide medical and nursing services to inmates at the Montgomery County prison and employed Mitzi Montz, RN, Jesse Kirsch, PA-C, and Samantha Kline, RN to provide nursing and medical services to inmates at the Berks County prison. *See* ECF Doc. No. 23 at ¶¶ 2-7.

Mr. Roth additionally named as defendants "C.O. Baker" and "C.O. Reilly" at the Montgomery County prison and Deputy Warden Smith of the Berks County prison. The present motion is filed solely by the PrimeCare Defendants.

[14] PrimeCare Defendants concede Mr. Roth attempts to state a claim under the Eighth Amendment. ECF Doc. No. 23-1 at 5.

[15] ECF Doc. No. 23.

[16] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

[17] *Natale v. Camden Cnty. Corr. Facility*, 31 F.3d 575, 582 (3d Cir. 2003).

[18] *Johnson v. Stempler*, 373 F. App'x 151, 153 n.1 (3d. Cir. 2010) (quoting *Monmounty Cnty Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

[19] *Monmouth Cnty.*, 834 F.3d at 347 (quoting *Estelle*, 429 U.S. at 103, 105).

[20] *Pearson*, 850 F.3d at 538 (citing *Monmouth Cnty.*, 834 F.3d at 347).

[21] *Castro v. Kastora*, No. 18-1029, 2018 WL 4538454, at *5 (E.D.Pa. Sept. 20, 2018).

[22] *Estelle*, 429 U.S. at 105-06.

[23] ECF Doc. No. 23-1 at 8.

[24] ECF Doc. No. 2 at 22.

[25] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[26] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)) (footnote omitted).

[27] *Id.* at 584 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

[28] *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).

[29] *Id.* (citing *Bryan Cnty.*, 520 U.S. at 404).